UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JIMMY WAYNE MASENGALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:11-CV-7 |
| v. ) | |
| ) | (Collier/Carter) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Administrative Record (Doc. 11) and defendant's Motion for Summary Judgment (Doc. 15) and plaintiff's Reply (Doc. 19).

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

## Application For Benefits

Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income, alleging disability beginning April 30, 2008 due to chronic obstructive pulmonary disease and post-herpetic neuralgia, among other conditions. (Tr. 91-103).

The Agency denied his applications initially and on reconsideration (Tr. 34-43, 49-54). After a hearing (Tr. 21-30), an administrative law judge (ALJ) found him not disabled in a decision dated January 12, 2010 (Tr. 5-16). Plaintiff timely pursued his administrative remedies, and this case is now ripe for review. See 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Services*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case he cannot return to his former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he can perform, considering his age, education and work experience. *Richardson v. Secretary, Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, the Commissioner's findings must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its

own judgment for that of the Commissioner even if it finds the evidence preponderates against the Commissioner's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Crisp v. Secretary, Health and Human Services*, 790 F.2d 450 n. 4 (6th Cir. 1986). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1037 (6th Cir. 1994), citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986), quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

As the basis of the January 12, 2010 administrative decision that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since April 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Diffuse chronic interstitial lung disease, chronic obstructive pulmonary disease, emphysema, asthma, and status-post cardiac ablation (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work (20 CFR

404.1565 and 416.965).

7. The claimant was born on April 13, 1967 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2008 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-19). Such findings by the Commissioner are conclusive if they are supported by substantial evidence in the record. *Shaw v. Schweiker*, 730 F.2d 462 (6th Cir. 1984); *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir), *cert. denied*, 423 U.S. 586, 96 S. Ct. 107, 46 L. Ed. 2d 82 (1975). The sole function of this Court is to determine whether the Commissioner's decision is based upon such evidence. *Plank v. Secretary of Health and Human Services*, 734 F.2d 1174 (6th Cir. 1984); *Le Master v. Weinberger*, 533 F.2d 337 (6th Cir. 1976). The Supreme Court has defined substantial evidence as " . . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra*, 402 U.S. at 401, (*quoting Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229, 83 L. Ed. 2d 126, 140, 59 S. Ct. 206 (1938)).

4

## Issues Raised

Plaintiff raises the following issues:

I. The ALJ erred in equating the fact that Plaintiff's lung disease was "stable" with a finding that it was not disabling.

II. The ALJ erred in failing to address Plaintiff's post-herpetic neuralgia as a "severe impairment," and erred in failing to consider that impairment in making his residual functional capacity findings.

III The ALJ erred by failing to consider the treating Nurse Practitioner's opinion in accordance with SSR 06-03p, and improperly rejected that opinion for insufficient reasons.

## Statement of Relevant Facts

**1.  Vocational Background**

Plaintiff was age 41 at his alleged disability onset and age 42 when the ALJ issued his decision (Tr. 91). Plaintiff has a general equivalency diploma and has worked in the past as a construction worker (Tr. 24-25, 115, 124, 155-160).

**2.  Statements from Plaintiff**

Plaintiff reported that he regularly saw to his own personal care, went on walks and drives, shopped for food, clothes, and household items, visited with friends, went fishing and camping, helped with housework and laundry, and mowed a ¼-acre lot. He goes out to visit friends and family but cannot do the jobs as he did in the past (Tr. 27, 118, 129-130, 143-144, 148). Plaintiff alleged disability due to low back pain, heart trouble, and lung disease that caused shortness of breath, weakness, and fatigue (Tr. 110, 121, 138).

**3.  Relevant Medical Evidence**

Plaintiff's alleged disability began in April 2008 (Tr. 91). In June 2008, Plaintiff

5

complained of a month-long burning in his lungs (Tr. 256). A chest x-ray suggested possible pneumonia (Tr. 288). On exam, Plaintiff's breath sounds were normal with no respiratory distress, but he had some mild left chest tenderness on palpation (Tr. 257). Emergency room (ER) personnel diagnosed bronchitis and prescribed antibiotics (Tr. 253, 261).

On July 6, 2008, Plaintiff complained of chest pain (Tr. 220). An EKG was normal (Tr. 221), and imaging showed interstitial lung disease similar to previous studies done in November 2006 (Tr. 218). ER personnel diagnosed pleuritic chest pain and prescribed a pain reliever (Tr. 222-223). The following day, Plaintiff complained to nurse practitioner Ms. Roaché of nausea and coughing (Tr. 358). He reported that he did not fill his prescription for pain reliever and was still smoking up to 4 packs of cigarettes per day (Tr. 358). On exam, Plaintiff had regular heart rate and rhythm and no musculoskeletal atrophy or weakness (Tr. 358). He had some diminished breath sounds in his left lung, scattered wheezing in his right lung, and some left-sided chest pain (Tr. 358). Bronchodilator treatment improved his symptoms (Tr. 358). Ms. Roaché diagnosed tobacco abuse and COPD/chronic bronchitis (Tr. 358). She recommended smoking cessation and bronchodilator medications (Tr. 358).

On July 21, 2008, Plaintiff reported to Ms. Roaché that medication had improved his COPD and nausea symptoms (Tr. 357). On exam, he had clear lungs, regular heart rate and rhythm, normal gait, and no musculoskeletal atrophy or weakness (Tr. 357). Ms. Roaché diagnosed insomnia, restless leg syndrome (RLS), reflux, COPD, history of cardiac ablation, and tobacco abuse (Tr. 357). She recommended bronchodilators, an antacid, and RLS medication (Tr. 357).

At a consultative exam on July 29, 2008, Plaintiff reported smoking two packs per day for the past 25 years and that he continued to smoke, despite experiencing daily shortness of breath for

6

the past 9 years and chest pain for the past 5 years (Tr. 175). He stated his medications helped him breathe better (Tr. 175). Consultative examiner Dr. Pinga noted Plaintiff was able to stand, perform various types of walking, and get on the exam table without problems (Tr. 176). Exam findings as to Plaintiff's neck, heart, abdomen, and neurological system were normal (Tr. 176). Dr. Pinga heard a few harsh breath sounds in Plaintiff's lungs on auscultation but no significant wheezes, rales, or rhonchi (Tr. 176). Dr. Pinga assessed that, despite Plaintiff's reported history of asthma, lung infections, chest pain, and cardiac ablation, he could, in an 8-hour workday, sit 6 hours, stand/walk 4 hours, and lift up to 10 pounds frequently and 15 pounds occasionally (Tr. 177).

A September 8, 2008, pulmonary function test revealed excellent air movement (Tr. 179-191, 199). At that time, Plaintiff reported smoking 3 packs of cigarettes per day (Tr. 180). On September 19, 2008, Plaintiff complained of shortness of breath and chest wall pain (Tr. 213). On exam, he could move all his extremities and had a supple neck, clear lungs, and regular heart rate and rhythm (Tr. 214). A chest x-ray showed stable chronic interstitial lung disease with no new infiltrate or no changes from the July 2008 chest imaging (Tr. 212, 215). ER personnel again diagnosed pleurisy and prescribed a pain reliever and a bronchodilator (Tr. 215-216).

On September 19, 2008, state agency physician Dr. Allison reviewed and summarized Plaintiff's medical records dating back to 2002 and opined Plaintiff could perform medium work[1] with no concentrated exposure to pulmonary irritants (Tr. 192-199). Dr. Allison opined Plaintiff's subjective reports of symptoms were not fully credible based on the relatively mild

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

7

findings in the file (Tr. 197). He opined Dr. Pinga's assessment was too restrictive in light of the mildness of his own objective findings and the other evidence of record (Tr. 198).

On October 5, 2008, Plaintiff complained of shortness of breath and lung and chest pain on deep respiration (Tr. 207). An EKG was normal (Tr. 207), and chest imaging showed stable chronic interstitial change in Plaintiff's lungs with no other definite active pathology (Tr. 205). ER personnel again diagnosed pleuritic chest pain and prescribed pain relievers (Tr. 209-210).

On October 15, 2008, Plaintiff complained of stomach and back pain for the past 3 days (Tr. 342). On exam, his chest was clear, his heart was regular, and his abdomen was soft with mild diffuse tenderness (Tr. 343). Imaging showed stable chronic interstitial lung disease with no bowel obstruction or abnormal abdominal calcifications (Tr. 341). ER personnel diagnosed abdominal pain and possible adverse reaction to a pain reliever and prescribed a different pain reliever (Tr. 345-346).

On October 22, 2008, Plaintiff complained of shortness of breath and burning pain in his left chest for the past 3 days (Tr. 267). On exam, his chest was non-tender with normal breath sounds and no respiratory distress (Tr. 270), and imaging showed mild diffuse interstitial change in Plaintiff's lungs similar to prior imaging studies (Tr. 272, 289-292). ER personnel diagnosed chest pain and shingles and prescribed pain relievers and medication for shingles (Tr. 276).

In November 2008, Plaintiff complained to Ms. Roaché's office of increased shortness of breath and a dry cough (Tr. 356). On exam, he had regular heart rate and rhythm and clear lungs with non-labored respiration and no wheeze; Ms. Roaché's office recommended no new treatment (Tr. 356).

On December 1, 2008, state agency physician Dr. Pennington reviewed Plaintiff's medical

8

records and opined Plaintiff could perform light work[2] with frequent postural activity and no concentrated exposure to pulmonary irritants (Tr. 307-312). He agreed with Dr. Allison that Dr. Pinga's assessment was too restrictive in light of the mildness of his own objective findings and the other evidence of record (Tr. 311).

On December 17, 2008, Plaintiff complained of back right flank pain and dizziness after loading wood (Tr. 333-334). Imaging showed stable chronic interstitial lung disease and no acute cardiopulmonary disease (Tr. 332). ER personnel diagnosed right paralumbar strain and prescribed a pain reliever (Tr. 335-336).

In January 2009, Plaintiff complained of cough and lower chest pain (Tr. 326). An EKG was normal (Tr. 326), and imaging showed stable interstitial lung disease with no focal pneumonia (Tr. 324). On exam, his chest was clear with good air movement, his heart was regular, and he had some mild chest tenderness on palpation (Tr. 327). ER personnel diagnosed atypical chest pain and prescribed a pain reliever (Tr. 328-329).

In February 2009, Plaintiff complained of cough and difficulty breathing for the past 2 weeks (Tr. 316). Imaging showed chronic interstitial lung disease with no acute process (Tr. 315, 368-369). ER personnel diagnosed COPD exacerbation and prescribed anti-inflammatory medication (Tr. 318-319).

---

[2] Light work involves lifting up to 20 pounds occasionally and 10 pounds frequently and walking/standing a good deal or sitting most of the time while pushing and pulling arm or leg controls. See 20 C.F.R. §§ 404.1567(b), 416.967(b).

9

On March 19, 2009, Plaintiff reported to Ms. Roaché that his COPD and reflux were much better and he was only smoking half a pack per day and working in construction laying sheetrock (Tr. 355). On exam, he had clear lungs but some wheezes and cough (Tr. 355). Ms. Roaché recommended he change one of his bronchodilator medications (Tr. 355).

On March 21 and 23, 2009, Plaintiff complained of side pain but left the ER without being seen (Tr. 278-279, 411).

An April 2009 exam at Ms. Roaché's office revealed clear lungs with no wheezes and non-labored respiration and regular heart rate and rhythm (Tr. 354). Post herpetic neuralgia appeared on Ms. Roaché's list of Plaintiff's diagnoses (Tr. 354).

On May 24, 2009, Plaintiff complained of difficulty breathing (Tr. 402). An EKG was normal (Tr. 402), imaging showed no acute cardiopulmonary disease (Tr. 400), and exam findings were unremarkable (Tr. 403). ER personnel diagnosed shortness of breath and anxiety and prescribed a pain reliever (Tr. 405, 409).

On May 26, 2009, Plaintiff complained of right side pain (Tr. 281). On exam, his chest was non-tender with normal breath sounds and no respiratory distress, and he had some tenderness in his low back (Tr. 282). Imaging showed interstitial lung disease that had not significantly changed since the October 2008 x-rays (Tr. 287). Plaintiff left the hospital before receiving a diagnosis or medication (Tr. 281).

In June 2009, Plaintiff complained of left-sided numbness (Tr. 387). An EKG was normal (Tr. 387) and imaging showed no acute cardiopulmonary disease or intracranial process (Tr. 383-384). On exam, he had a clear chest and normal heart rate and rhythm, was neurologically intact, and had some left-sided trapezius tenderness with movement (Tr. 388, 391). ER personnel

diagnosed nonspecific left shoulder pain and resolved left leg paresthesia and prescribed a pain reliever (Tr. 389, 385).

On July 2, 2009, Plaintiff complained to Ms. Roaché's office of left-sided chest wall pain and tight leg muscles (Tr. 353). On exam, he had clear lungs with no wheezes and non-labored respiration, regular heart rate and rhythm, and normal gait (Tr. 353). Ms. Roaché recommended a new pain reliever because Plaintiff complained the one he had was not effective (Tr. 353).

On July 13, 2009, Ms. Roaché noted Plaintiff had no new complaints and chest imaging had shown no change in his condition (Tr. 352, 365-366). On exam, Plaintiff's lungs cleared when he coughed, he had no wheezes, regular heart rate and rhythm, and no musculoskeletal atrophy or weakness (Tr. 352). Ms. Roaché opined that, in an 8-hour workday, Plaintiff could not sit for more than 6 hours, stand for more than 20 minutes, walk for more than 15 minutes, or lift more than 10 pounds (Tr. 347). In addition, she opined he could only occasionally engage in postural activities and should restrict his exposure to pulmonary irritants, humidity, moving machinery, and temperature extremes (Tr. 348).

On August 3, 2009, Plaintiff complained of left rib pain after he was cleaning the gutters and fell 13 feet from a ladder into an azalea bush (Tr. 372-374). He was prescribed over-the-counter pain relievers and told to apply ice and heat to the affected area (Tr. 378).

## Analysis

1. Plaintiff first argues the ALJ erred in equating a finding that Plaintiff's lung disease was "stable" with a finding that it was not disabling. The Commissioner on the other hand argues the ALJ specifically stated that he considered all of Plaintiff's symptoms, the extent to which they were consistent with the objective medical evidence and other evidence, as well as the opinion

evidence of record (Tr. 11). Plaintiff alleges the ALJ erroneously mistook notations throughout Plaintiff's medical record indicating his lung condition was stable for conclusions that Plaintiff's lung condition was "good." Looking at the record as a whole, I conclude the ALJ did not mistake the significance of the objective findings. He properly considered them as part of the substantial evidence supporting his ultimate finding that Plaintiff experienced some impairments that limited his ability to do work activity to some extent, but was still capable of sedentary work and was, therefore, not disabled (Tr. 11-15). The ALJ evaluated the record as a whole, including the medical evidence of Drs. Pinga, Allison and Pennington, along with the opinion of nurse Roaché and Plaintiff's statements, to determine the credibility of his subjective complaints and the effect of his impairments on his RFC (Tr. 11-14).

As the Commissioner argues, Plaintiff's lung impairment is relevant to the disability analysis only to the extent that it affected his ability to work. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). The question is whether Plaintiff's impairments interfered with his ability to work beyond the limitations the ALJ found.

When a plaintiff attempts to establish disability based on subjective complaints, he must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition could be reasonably expected to cause symptoms as severe as alleged. See 20 C.F.R. §§ 404.1529, 416.929; *see also Walters v. Comm'r*

12

*of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

In this case, Plaintiff complained of disabling pain and difficulty breathing, but the record failed to establish he was as limited as he claimed. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) (finding an ALJ may properly discount a claimant's credibility based on contradictions among medical reports, claimant's testimony, and other evidence). As the ALJ explained, discrepancies between Plaintiff's assertions and other recorded information constitute substantial evidence to support his finding as to the credibility of Plaintiff's statements and as to Plaintiff's RFC (Tr. 11-14).

Plaintiff's alleged functional limitations conflict with recorded medical evidence. Objective chest imaging findings, often noting mild changes, no significant change, and no acute disease, unremittingly showed not only that Plaintiff's lung impairment was stable but also that it had changed little from 2006, well before Plaintiff alleged he became disabled (Tr. 205, 212, 215, 218, 272, 287, 289-292, 315, 324, 332, 341, 368-369, 400). A September 2008, pulmonary function test revealed excellent air movement, though Plaintiff was smoking 3 packs of cigarettes per day at the time (Tr. 179-191, 199). Objective exam findings were often normal and revealed improvement in Plaintiff's symptoms, particularly when he complied with treatment

13

recommendations, such as bronchodilator medication and smoking cessation (Tr. 214, 270, 327, 343, 352-358, 365-366, 388-391, 400). No physician indicated Plaintiff had limitations that would preclude work (Tr. 175-350, 371-409). Several physicians opined he could do some work. Dr. Pinga opined Plaintiff could do sedentary work (Tr. 177); Dr. Allison opined he could perform medium work (Tr. 192-199), and Dr. Pennington opined Plaintiff could do light work (Tr. 307-312).

Plaintiff's alleged functional limitations also conflict with his reports of activities, such as personal care and grooming, walking, driving, shopping, visiting friends, mowing the lawn, cleaning house, doing laundry, and fishing (Tr. 27, 129-130, 143-144, 148). Plaintiff argues use of Plaintiff's activities of daily living is *post hoc* rationalization but the ALJ did discuss Plaintiff's activities to some degree:

> The claimant alleges disability due to shortness of breath caused by chronic obstructive pulmonary disease and emphysema. He also alleges that he developed dull aching chest pain with palpitations, for which he underwent cardiac ablation surgery. The claimant testified he mows his lawn with a riding mower and he is able to help his wife wtih household chores which do not require heavy lifting.

(Tr. 11)

From his alleged disability onset through the date of the ALJ's decision, Plaintiff admitted to medical providers that he had performed activities that were substantially more strenuous than the sedentary work the ALJ found he could perform. In December 2008, Plaintiff reported he had been loading wood (Tr. 333-334). In March 2009, he told Ms. Roaché he had been working in construction laying sheetrock (Tr. 355). In August 2009, Plaintiff reported cleaning out some gutters (Tr. 372-374). Plaintiff clearly enjoyed a range of activities far beyond the "minimal daily functions" noted in *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 246-249 (6th Cir. 2007).

14

Plaintiff also failed to comply with treatment recommendations, dating back to March 2002 (Tr. 166), that he quit smoking. If Plaintiff experiences significant problems due to breathing problems, it is reasonable to conclude he would attempt to alleviate those symptoms by following the recommendations of his medical care providers as the Commissioner argues. From Plaintiff's failure to follow recommendations to stop smoking one could infer that his lung impairment was not as limiting as he claimed. See 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi); *Mullins v. Sec'y of Health and Human Servs.*, 836 F. 2d 980, 985 (6th Cir. 1987) (finding that ALJ properly noted that "it was difficult to envision a severe environmental restriction imposed by a pulmonary condition when the claimant was a heavy smoker"); *see also Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

I conclude Plaintiff failed to meet his burden of proving his condition caused disabling limitations. There is opinion evidence of nurse Roaché that supports Plaintiff's position, but there is clearly substantial evidence to support the Commissioner in the opinions of Drs. Pinga, Allison and Pennington. Substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary work. The evidence does not support Plaintiff's allegations of additional functional limitations. The ALJ properly considered the relevant evidence and properly performed his fact-finding duty to resolve any conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Given the inconsistencies between the medical evidence, Plaintiff's activities, and his subjective complaints, the ALJ properly found his subjective complaints less than fully credible, not regarding his experience of symptoms but regarding the extent to which those symptoms limited his work capacity (Tr. 11). The ALJ did not adopt wholesale Plaintiff's assertion that his symptoms so limited him as to preclude all work activity, but he considered the

possible effects of Plaintiff's symptoms and accounted for them in his findings when he identified Plaintiff's severe impairments and included limitations from them in his finding as to RFC (Tr. 10-14). I conclude substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

2. Plaintiff next argues the ALJ erred in failing to address Plaintiff's post-herpetic neuralgia as a "severe impairment," and erred in failing to consider the impairment in making his residual functional capacity findings.

Plaintiff argues the ALJ failed to evaluate his alleged post-herpetic neuralgia properly. As noted above, the ALJ properly considered Plaintiff's impairments in combination, evaluated his subjective complaints, and accounted for all the resulting limitations before concluding that Plaintiff could perform sedentary work. The ALJ did not parcel out Plaintiff's impairments but properly considered all of his impairments in evaluating his claim. *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990); *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987). The ALJ found Plaintiff did not have a "combination of impairments" that met or equaled a listed impairment (Tr. 10). The Sixth Circuit has noted that an ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of all the impairments in combination, "where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy*, 901 F.2d at 1310.

Moreover, the ALJ was not required to list every one of Plaintiff's diagnoses as severe impairments. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (noting that a failure to find that a particular impairment was severe was not reversible error because ALJ found other severe impairments). A diagnosis is only relevant to the extent the

16

condition affects Plaintiff's ability to work. *See Higgs*, 880 F.2d at 863. Given Plaintiff's reported activities, discussed above, he failed to show that his combined impairments caused disabling limitations. Moreover, the evidence regarding Plaintiff's physical condition, including Ms. Roaché's records, does not support Plaintiff's allegations of disabling limitations. No objective findings indicate Plaintiff suffered restricted motion, weakness, or any other limitation due to pain; the most generous findings regarding his pain complaints indicate mild tenderness to palpation (Tr. 176, 214, 257, 270, 282, 327, 352-358, 388, 391, 403). The ALJ properly considered the evidence from Ms. Roaché together with the other evidence in performing his duty of assessing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545, 404.1546(c), 416.945, 416.946(c).

I agree with the Commissioner that Plaintiff failed to prove his alleged post-herpetic neuralgia caused work-related limitations beyond those for which the ALJ accounted in his finding as to Plaintiff's RFC. Plaintiff argues the ALJ did not discuss his post herpetic neuralgia other than a reference to the finding where he discusses the opinion of nurse Roaché (Doc. 12, Plaintiff's Memorandum at 10, 11). However, the ALJ did refer to the possible condition in referring to the October 22, 2008, emergency room visit. During that visit this condition was referred to as suspected (Tr. 269) or as a possibility (Tr. 271) and in a discharge note one finds the words, "chest pain, shingles." However the emergency record of Dr. Ronald Waiers indicates there was no cause identified for Plaintiff's left flank or abdominal pain (Tr. 272). The ALJ specifically pointed to this finding (Tr. 13). I conclude the ALJ did consider the condition in limiting Plaintiff to sedentary work and remand is not required in this situation. Given the record as a whole, substantial evidence supports the ALJ's findings.

 3. Finally, Plaintiff argues the ALJ failed to consider the treating Nurse Practitioner's

17

opinion in accordance with SSR 06-03p, and improperly rejected that opinion for insufficient reasons. An ALJ is responsible for weighing the evidence of record and determining the case accordingly. *See Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). In determining the weight to give a medical opinion, an ALJ must consider the source's examining and treating relationship with the claimant, the evidence supporting the opinion, how consistent the opinion is with the record as a whole, and other factors. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); Social Security Ruling (SSR) 96-2p. Opinions from a source who is not an acceptable medical source are not entitled to any special deference or weight. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1) (defining acceptable medical sources and other sources), §§ 404.1527, 416.927 (discussing the evaluation of medical opinions from acceptable medical sources).

In finding Plaintiff could do sedentary work, the ALJ properly evaluated the medical evidence, including Ms. Roaché's opinion that Plaintiff could not perform even sedentary work (Tr. 14, 347-350). The ALJ "assigned little weight" to the opinion because it was inconsistent with clinical findings (Tr. 14). Objective findings from the date of Plaintiff's alleged disability onset forward, including those of Ms. Roaché, simply do not support such a restrictive assessment. As the Commissioner argues, Ms. Roaché's findings on exam were relatively benign and indicated improvement of Plaintiff's symptoms with treatment (Tr. 352-358). Therefore, even if considered under the regulations concerning opinions from acceptable medical sources, Ms. Roaché's opinion would not be entitled to great or controlling weight. *See* 20 C.F.R. §§ 404.1527(d), 404.1527(d); *see also Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

18

Further, the opinions of acceptable medical sources conflicted with Ms. Roaché's assessment (Tr. 177, 192-199, 307-312). Several physicians opined Plaintiff could do some work. Dr. Pinga opined Plaintiff could do sedentary work (Tr. 177); Dr. Allison opined he could perform medium work (Tr. 192-199), and Dr. Pennington opined Plaintiff could do light work (Tr. 307-312).

     I conclude the ALJ properly relied on substantial evidence, considered all relevant evidence and resolved the conflicts in that evidence in assessing Plaintiff had the residual functional capacity to perform a full range of sedentary work.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 15) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 11) be DENIED.[3]

S/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).