UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JIMMY WAYNE MASENGALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:11-CV-7 |
| v. | ) | |
| | ) | Carter/Collier |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Jimmy Wayne Masengale ("Plaintiff") brought this action on January 19, 2011, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income under 42 U.S.C. §§ 416(i), 423, & 1382. The Court referred the matter to United States Magistrate Judge William B. Mitchell Carter, pursuant to 28 U.S.C. § 636(b) and in accordance with Fed. R. Civ. P. 72(b) for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 11) and Defendant's motion for summary judgment (Court File No. 15). The magistrate judge filed an R&R (Court File No. 20) recommending Defendant's motion for summary judgment be granted (Court File No. 15), Plaintiff's motion for judgment on the pleadings be denied (Court File No. 11), and the Commissioner's decision be affirmed. Plaintiff timely filed an objection to the R&R (Court File No. 21). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 20).

I.  **STANDARD OF REVIEW**

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the Administrative Law Judge's ("ALJ") findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is greater than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Brainard*, 889 F.2d at 681.

If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999). If the ALJ's decision was not supported by substantial evidence, the Court should typically reverse and remand the case for further administrative proceedings. However, when "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking," the court may reverse the decision and award benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.

2

1994).

## II. DISCUSSION

Here, Plaintiff objects to the magistrate judge's disposition of three questions, which the magistrate judge answered in the negative:

> I. Whether the ALJ erred in equating the fact that Plaintiff's lung disease was "stable" with a finding that it was not disabling.
>
> 2. Whether the ALJ erred in failing to address Plaintiff's post-herpetic neuralgia as a "severe impairment," and erred in failing to consider that impairment in making his residual functional capacity findings.
>
> 3. Whether the ALJ erred by failing to consider the treating Nurse Practitioner's opinion, and improperly rejected that opinion for insufficient reasons.

For the following reasons, the Court finds the magistrate judge properly resolved these questions.[1]

### 1. "Stability" of Plaintiff's lung disease

The magistrate judge found the ALJ did not erroneously equate the "stable" condition of Plaintiff's lung condition with a "good" condition. Plaintiff does not address this finding in the body of his objection brief, but in the Conclusion section he briefly realleges the ALJ improperly rejected Plaintiff's breathing condition as "stable" without making adequate findings as to its disabling nature. The Court disagrees.

Plaintiff's lung condition is relevant to the disability analysis only to the extent it affected his ability to work. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The great weight of the evidence – well-beyond the "substantial evidence" necessary – supports a finding Plaintiff's

---

[1]Plaintiff does not take issue with the magistrate judge's basic recitation of the facts, thus the Court will not repeat them here.

3

Case 1:11-cv-00007-CLC-WBC   Document 23   Filed 03/14/12   Page 3 of 9   PageID #: 161

condition was not only "stable," but was non-disabling. Although the record shows Plaintiff frequently complained of pain and difficulty breathing, substantial medical evidence indicates this condition was not as limiting as Plaintiff claims. Multiple chest imaging tests in 2007, 2008, and 2009 not only showed Plaintiff's interstitial lung disease was "stable," but that it was essentially unchanged from 2006 – two years before Plaintiff's alleged disability onset. (*See* Tr. 205, 212, 215, 218, 272, 287, 289-92, 315, 324, 332, 341, 368-69, 400). The ALJ discussed these tests at length, and specifically noted Plaintiff's condition was not simply "steady," but steady vis-a-vis the 2006 level of severity.

Moreover, no physician ever opined Plaintiff's lung condition precluded him from working. Several physicians opined he could do some work: Dr. Pinga opined Plaintiff could do sedentary work (Tr. 177); Dr. Allison opined he could perform medium work (and criticized Dr. Pinga's opinion as too restrictive) (Tr. 192-199); and Dr. Pennington opined Plaintiff could do work with minor restrictions (Tr. 307-312). These doctors' opinions of Plaintiff's ability to work comport with Plaintiff's own reports of his activities, which include personal care and grooming, walking, driving, shopping, visiting friends, mowing the lawn, cleaning house, doing laundry, and fishing (Tr. 27, 129-30, 143-44, 148). Plaintiff even admitted to medical providers performing activities more strenuous than the sedentary work the ALJ found he could perform, including loading wood, laying sheetrock, and cleaning out gutters while on a ladder (Tr. 333-34, 355, 372-74).

The ALJ considered the myriad tests showing Plaintiff's lung condition to be "stable" vis-a-vis a 2006 pre-onset baseline, as well as the consistent opinions of doctors that Plaintiff's lung condition did not prevent him from working. The ALJ also considered Plaintiff's subjective opinion that his symptoms precluded all work activity, but reasonably discounted this opinion in the light

4

of medical opinions, and Plaintiff's own account of his daily activities. Accordingly, the Court finds the ALJ did not erroneously conflate Plaintiff's "stable" condition with a "good condition," but properly determined – on the basis of substantial evidence – that Plaintiff's lung condition, though limiting him to sedentary work, was not disabling.

### 2. Plaintiff's post-herpetic neuralgia

Plaintiff's next takes issue with the magistrate judge's finding the ALJ referred to, and properly considered, Plaintiff's post-herpetic neuralgia.[2] Plaintiff contends the ALJ was apparently unaware Plaintiff suffered from post-herpetic neuralgia. Plaintiff bases this contention on the following passage from the ALJ's decision:

> On October 22, 2008, the claimant presented to the emergency room with difficulty breathing, a burning sensation in his left lung, and left flank pain. The subsequent chest X-ray revealed interstitial lung disease, which was similar to the prior study. A CT scan only showed mild emphysematous change in the chest and a normal heart size. All other systems were unremarkable. Ultimately, there was no cause for left flank or abdominal pain identified[.]

(Tr. 13). Plaintiff correctly points out a deficiency in this statement by the ALJ. The ALJ based his "no cause" statement on the report of a CT scan performed on Plaintiff's abdomen on October 22, 2008, which states, among other things, "No cause for left flank or abdominal pain identified" (Tr. 272). However, post-herpetic neuralgia – a nerve condition – is not one which would show up on a CT scan. Hence, the report of the CT scan is not a universal statement that no cause for Plaintiff's abdominal pain was *ever* identified, but that no cause was identified through the CT scan. Indeed, during the same emergency room visit on October 22, 2008, a different doctor noted "suspected

---

[2]According to Plaintiff's motion for judgment on the pleadings, post-herpetic neuralgia is a condition caused by the herpes zoster virus – related to shingles – in which the patient suffers nerve pain.

5

zoster" and the "possibility of zoster," for which the doctor initiated acyclovir while "continu[ing] to w/u [workup] other causes" (Tr. 271).

However, while the Court agrees with Plaintiff that the ALJ's statement was incomplete, the Court does not agree the ALJ failed to adequately consider Plaintiff's possible post-herpetic neuralgia in making his disability determination. First, the emergency room records from October 22, 2008 which mention post-herpetic neuralgia, or "zoster," are tentative, speaking in terms of "suspected" and "possibility." The ALJ accurately stated Plaintiff experienced left flank pain on October 22, 2008, and his failure to note the pain may "possibly" have been caused by post-herpetic neuralgia is not a material omission. Second, the ALJ did note that on July 13, 2009, nurse practitioner Amber Roache stated Plaintiff had, among many other maladies (including restless leg syndrome), post-herpetic neuralgia (Tr. 14, 347). Nurse Roach ultimately opined Plaintiff was severely restricted in his ability to work. While the ALJ discounted nurse Roache's opinion as to Plaintiff's work abilities, nothing in the ALJ's decision indicates he doubted Nurse Roach's post-herpetic neuralgia diagnosis.

Moreover, and this brings the Court to its third and final point, nothing in the record suggests Plaintiff's post-herpetic neuralgia affected his ability to work, and certainly not beyond the restrictions the ALJ already found to be appropriate in light of Plaintiff's lung condition. No findings indicate Plaintiff suffered restricted motion, weakness, or any other limitation due to pain. The most that can be reasonably distilled from the record as possibly relating to nerve pain is that Plaintiff had mild tenderness to palpation (Tr. 177, 257, 270, 282, 327, 353-54, 388, 391). Additionally, during his examination by both the ALJ and his own counsel, Plaintiff said nothing about nerve pain or post-herpetic neuralgia, though he spoke at length about his lung condition (Tr.

6

23-30). This suggests that even to Plaintiff his post-herpetic neuralgia was, at best, of only marginal significance to his disability claim.

In light of the scant and sometimes-tentative references to post-herpetic neuralgia in the record, and the absence of virtually any suggestion Plaintiff's post-herpetic neuralgia affected his ability to work, the ALJ's brief consideration of post-herpetic neuralgia – in the context of discussing nurse Roache's diagnoses – was adequate. Accordingly, the Court finds Plaintiff's objection is without merit.

### 3. Nurse Roache's Opinion

Plaintiff's final objection concerns the ALJ's giving little weight to nurse Roache's opinion that Plaintiff was severely restricted in his ability to work. In his decision, the ALJ stated "I have assigned little weight to the opinion of Amber Roache, F.N.P., because it is inconsistent with the clinical findings spanning the course of two years." (Tr. 14). An ALJ is responsible for weighing the evidence of record and determining the case accordingly. *See Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). In determining the weight to give a medical opinion, an ALJ must consider the source's examining and treating relationship with the claimant, the evidence supporting the opinion, how consistent the opinion is with the record as a whole, and other factors. *See* C.F.R. §§ 404.1527(d), 416.927(d); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the ALJ acted appropriately in assigning little weight to nurse Roache's opinion that Plaintiff could not do even sedentary work. Nurse Roache's opinion was at odds with the opinions of three other doctors: Dr. Pinga, Dr. Allison, and Dr. Pennington, all of whom opined Plaintiff could do some work (Tr. 177, 192-99, 307-12). Plaintiff argues nurse Roache's opinion should have

7

been given significant weight, because she was the only medical provider to mention Plaintiff's post-herpetic neuralgia. However, as discussed above, Plaintiff's post-herpetic neuralgia warranted little consideration by the ALJ, thus nurse Roache's mentioning of the condition cannot logically serve to elevate her opinion over all others.[3] Multiple, indepenent, objective findings from the date of Plaintiff's alleged disability onset forward show Plaintiff's condition was "stable" viz-a-viz the pre-onset time period, and that Plaintiff was not so impaired as to be unable to perform any work.[3] *See supra*, Part 1. Accordingly, the ALJ did not err in discounting nurse Roache's opinion, which was at odds with these objective findings as well as the opinions of several doctors.

### III. CONCLUSION

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 20). The Court will **GRANT** Defendant's motion for summary judgment (Court File No. 15) and **DENY** Plaintiff's motion for judgment on the pleadings (Court File No. 11). The Court will **AFFIRM** the Commissioner's decision and **DISMISS** the case.

**An Order shall enter.**

---

[3] At any rate, Plaintiff's post-herpetic neuralgia does not appear to have played a large role in nurse Roache's analysis. Her description of Plaintiff's impairments focuses on his lung disease, and then adds at the end "He also has post-herpetic neuropathic pain, also has restless leg syndrome" (Tr. 347). She described this pain as "moderately severe," the second-to-lowest option on a scale of four descriptors (Tr. 349). Her report does not explain why Plaintiff's "moderately severe" post-herpetic neuralgia pain would keep him from performing sedentary work.

[3] Even nurse Roache's examination notes reflect Plaintiff's conditions improved when he complied with treatment (Tr. 354-55). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993).

8

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**